The R. J. Brown Company v. Commissioner.
R. J. Brown Co. v. Commissioner
Docket No. 12313.
United States Tax Court
1947 Tax Ct. Memo LEXIS 61; 6 T.C.M. (CCH) 1115; T.C.M. (RIA) 47282; October 13, 1947
*61 Donald Gunn, Esq., 3746 Grandel Square, St. Louis, Mo., and George M. Rassieur, Esq., for the petitioner. Harlow B. King, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves income and excess profits tax deficiencies for the fiscal years ended October 31, 1941, and October 31, 1942, as follows: Income
Excess
Tax
Profits Tax
1941
$5,518.96
$ 5,321.88
1942
2,901.07
12,467.60 The only error alleged in the petition is the Commissioner's disallowance of part of the compensation which the petitioner paid to three of its officers during the taxable years. Some of the facts have been stipulated and we incorporate the stipulation in our findings of fact by reference. Findings of Fact The petitioner is a corporation, with its principal place of business and office located in St. Louis, Missouri. Its tax returns for the years involved were filed with the collector of internal revenue for the 1st district of Missouri. The petitioner kept its accounts and made its returns on an accrual basis and for a fiscal year ending October 31. The petitioner's business is selling various kinds of solvents *62 and lubricants. Its chief commodity is naphtha, which it sells to commercial users; such as, dry cleaners and paint and varnish companies. It operates plants at St. Louis, Missouri; Detroit, Michigan; and Louisville, Kentucky. The petitioner was organized in 1927 by R. J. Brown, who became, and has continued to be, its principal stockholder and its president. The other officers whose compensation is here questioned were T. W. Scherer, vice-president, and William R. Pfundt, secretary. Together they own all of the petitioner's capital stock. Brown held 429 1/2 shares; Scherer, 36 shares; and Pfundt, 34 1/2 shares. Brown has been associated with the oil business since about 1908. He was employed by the Texas Company as a salesman until about 1913 when, with an associate, he established a business of retailing petroleum products. During World War I he served as a lubrication expert with the Army Air Force. After leaving the military service in 1919 he returned to St. Louis and organized a petroleum brokerage business in which Scherer and Pfundt became associated with him. The three have worked together continuously since that time. After financial reverses the company which Brown organized *63 in 1919 was liquidated and was succeeded by the petitioner company. Brown secured the necessary financial backing for the petitioner from a business acquaintance, Charles H. Osthoff, then president of Liberty Bell Oil Company. Osthoff advanced funds to the petitioner and endorsed its notes, taking an assignment of its assets as security. He served as treasurer of the company and controlled all of its finances until these obligations were paid off in 1936. At Osthoff's suggestion Brown's compensation was fixed when the petitioner was organized at $400 a month salary plus 30 per cent of the net profits, or such amount as would permit the company to maintain a book value of not less than $100 per share for all of its stock. A resolution to that effect was adopted at a meeting of the board of directors held December 1, 1927. At the same meeting Scherer and Pfundt were voted salaries of $200 per month each. The arrangement for paying Brown a bonus of 30 per cent on net profits has been continued up to the present time. His annual base salary has been increased from $4,800 in 1927 to $18,000 during the taxable years 1941 and 1942. Resolutions were adopted by petitioner's directors on *64 November 5, 1940, and November 4, 1941, authorizing a salary of $18,000 per year to Brown, plus a bonus of 30 per cent of the net profits, and salaries of $10,000 a year each to Scherer and Pfundt, payable $500 a month and the balance at the end of the year, if the financial condition of the company permitted. Under this arrangement Brown was paid $37,933.15 in 1941 and $35,014.86 in 1942. Scherer and Pfundt were paid $10,000 each in both years. In determining the deficiencies herein the respondent allowed the deduction of $23,000 of the compensation paid Brown and $6,000 of that paid to Scherer and Pfundt each. Brown was at all times in control of petitioner's operations and was largely responsible for its success. In addition to his duties as president of the company he secured most of the contracts under which the petitioner's products were sold. He spent more than half of his working time traveling. Many of the petitioner's customers were large concerns with which he had formed contacts before petitioner's organization. In 1937 Brown negotiated a contract with Standard Oil Company of Indiana under which petitioner was assured an adequate supply of naphtha, its principal product, *65 at a favorable price. In 1938 he obtained a favorable contract for the distribution of Pennzoil, a nationally advertised automobile oil. In Brown's absence from the office his duties were taken care of by Scherer. Among Scherer's other duties were seeing that orders were promptly filled, that supplies were adequate, and arranging for transportation of the products purchased and sold. Pfundt's duties as secretary included looking after the petitioner's accounts and finances. He also supervised the lubricant plant, handled all supplies and equipment, and made out the various reports required by the Federal Government in the states in which petitioner did business. He also passed on all credits and looked after collections. Since about 1930 Scherer and Pfundt have received the same compensation. Their salaries varied from a low of slightly over $3,000 each in 1932, when the petitioner sustained a net loss, to $7,200 in 1937, when profits were comparatively large. In each of the years 1938, 1939 and 1940, both of these officers voluntarily agreed to take a reduction in salary so that Brown's compensation might be increased. He, Brown, had become obligated on a personal matter not *66 related to his business in the amount of $40,000, payable at the rate of $10,000 on May 12 of each of the years 1937 to 1940, inclusive. At the same time that Scherer's and Pfundt's salaries were reduced from $7,200 to $4,200 per year, in November 1937, Brown's salary was increased from $8,200 to $8,400 until April 1, 1938, and $18,000 thereafter until further agreed upon. In November, 1940, Scherer's and Pfundt's salaries were increased to $10,000 a year. The petitioner had about twenty employees during the taxable years who were not officers or stockholders. Their total compensation amounted to $41,339.96 in 1941 and $53,946.95 in 1942. The following tabulation shows gross sales of naphtha and the net profits therefrom for the years 1937 to 1943, inclusive: Year Ended
Total Sales
Net Profit
10-31-37
$ 695,349.40
$ 9,723.30
10-31-38
610,928.37
8,451.33
10-31-39
641,803.04
5,598.44
10-31-40
672,244.02
4,620.84
10-31-41
1,073,404.61
20,169.17
10-31-42
1,294,432.01
28,229.86
10-31-43
1,497,171.18
25,268.88
The gross sales of all other products for that period and the net profits thereon were as follows: Year Ended
Total Sales
Net Profit
10-31-37
$136,687.46
$ 2,365.40
10-31-38
114,903.07
553.98
10-31-39
133,084.56
2,517.85
10-31-40
172,496.03
7,538.83
10-31-41
281,017.05
27,190.23
10-31-42
335,370.03
11,205.81
10-31-43
402,714.53
14,164.45
*67 Most of the naphtha sales shown in the above tabulations were in tank carload lots. Petitioner's net profits, after taxes, and the dividends paid over the period 1937 to 1942, inclusive, were as follows: Net Profit
Cash Divi-
Year Ended
After Taxes
dends Paid
10-31-37
$10,779.01
$10,000.00
10-31-38
7,992.26
8,000.00
10-31-39
6,350.71
8,000.00
10-31-40
9,842.90
8,000.00
10-31-41
28,947.94
10-31-42
21,290.19
The petitioner is the largest independent distributor of naphtha in the United States. The compensation which the petitioner paid to its officers, Brown, Scherer and Pfundt, in 1941 and 1942, was reasonable compensation for services actually performed by those officers. Opinion LEMIRE, Judge: The only dispute between the parties in this proceeding is the allowance of compensation for the petitioner's three principal officers. The statute provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business including a reasonable allowance for salaries or other compensation for personal services actually rendered. Section 23 (a) (1) (A), Internal Revenue Code *68 . The question of the reasonableness of compensation is one of fact to be determined on the evidence adduced in each case. In the instant case, the evidence convinces us that the compensation which petitioner paid to its officers in the taxable years before us was reasonable. While the amount paid to Brown in each of the taxable years may seem large for a corporation of the petitioner's size, the evidence is that the petitioner's success was due largely to his personal efforts. The petitioner's business is primarily one of sales and service. In the beginning, especially, it depended to a large extent on the personal contacts which Brown had made before its organization. It was his knowledge of the business and his facilities for obtaining and disposing of the products dealt in that made it possible for the petitioner to operate successfully. The evidence is that the normal commissions alone on the sales which Brown made, individually, would have amounted to more than the compensation paid him. The arrangement under which he received a bonus of 30 per cent of the net profits, in addition to his salary, had been in existence since the petitioner was first organized. It was considered *69 reasonable at the beginning, and, in fact, was proposed by the petitioner's financial backer who had risked his money on his faith in Brown's ability. The fact that a portion, or even all, of the compensation of a corporate officer or employee is based upon profits does not affect its deductibility so long as the total amount paid is reasonable compensation for services actually performed. The respondent has reduced the compensation of Scherer and Pfundt from $10,000 to $6,000 each. The $4,000 disallowed was the amount of the bonuses paid to them in each of the taxable years. The respondent's argument on brief is directed principally to the compensation paid to Brown. He contends, however, that the compensation paid to Scherer and Pfundt was excessive and was, in part at least, to compensate them for the reduction in salary which they had taken in the preceding years. Our question, of course, is whether the amounts paid to these officers in the taxable years 1941 and 1942 were reasonable compensation for the services performed by them. The evidence convinces us, and we have found as a fact above, that the $10,000 paid to each of these officers in the taxable years 1941 and 1942 *70 was reasonable compensation for services rendered. Decision will be entered under Rule 50.